# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LARRY D. CONLEY,
        Petitioner,

v.                                        Case No. 01C1060

DANIEL BERTRAND,
        Respondent.

## DECISION AND ORDER

Pro se petitioner Larry D. Conley, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 1998 conviction of first-degree reckless injury, for which he was sentenced to ten years in prison on the ground that he was denied his right to counsel on appeal.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, the state courts appointed Attorney Paul Bonneson as petitioner's postconviction/appellate counsel. Shortly after Bonneson commenced petitioner's appeal, petitioner filed a series of letters with the court in which he complained about Bonneson's representation and requested appointment of new counsel. Petitioner thought that Bonneson was not diligently handling his case, felt that Bonneson should have communicated with him more frequently, and disagreed with Bonneson over the issues to be raised on appeal. In response to petitioner's letters, the court of appeals issued an order stating as follows:

>  Conley is advised that this court does not appoint counsel directly. The court will refer Conley's request for new counsel to the office of the state

public defender. Conley is advised that the court has attached a copy of his motions to the public defender's copy of this order.

> Conley is further advised, however, that if the public defender, in the exercise of its discretion, declines to appoint him new counsel, he will be required to choose between continuing Attorney Bonneson's representation, or proceeding pro se or with counsel he himself retains. Conley is advised that if he decides to continue Attorney Bonneson's representation and Attorney Bonneson files a no merit report, Conley will have an opportunity to respond to the no merit report filed by Attorney Bonneson. In his response, Conley may raise any and all claims that he believes should be raised in postconviction proceedings or on appeal. Conley is further advised that this court will review the no-merit report, the response, and will independently review the entire record to determine if there are any potential issues of arguable merit to be presented in postconviction proceedings or on appeal. Conley is advised that if the court concludes that there are potential issues of arguable merit, the no merit report will be rejected.

(Submission of Mat'ls [R. 28] Ex. 6 at 2.) The public defender's office determined that it would not appoint successor counsel and issued a report stating:

> As this court has advised Mr. Conley, in the event he continues with Attorney Bonneson's representation and a no merit report is filed, Conley will have the opportunity to raise, in his response to the report, any and all claims he believes should be raised by postconviction motion or appeal. This court will independently review the record to determine if there are potential issues of arguable merit and will reject the report if there are such issues.

(Id. Ex. 9 at 2.) The court of appeals accepted the public defender's report and issued an order stating:

> Conley must now decide whether to continue Attorney Bonneson's representation, or whether he wishes to continue this appeal pro se or with counsel he himself retains. This court will not further address Conley's complaints about Attorney Bonneson's representation. Conley will be given fifteen days from the date of this order to file a letter with the court indicating his choice. If Conley fails to file the letter required by this order, or if his letter does not clearly indicate how he wishes to proceed, the court will require Attorney Bonneson to continue his representation in this matter.

(Id. Ex. 11 at 2-3.)

Petitioner responded to the court's order by stating in a letter that "he is legally incompetent, and therefore, is force [sic] to continue representation with [Bonneson]." (Id. Ex. 13 ¶ 2.) In the same letter, petitioner requested "that the court issue an order, asking the said counsel Paul Bonneson to file a no-merit report . . . to allow the defendant the option to file a response." (Id. Ex. 13 ¶ 3.) The court of appeals therefore ordered Bonneson to continue representing petitioner, gave Bonneson thirty days to file a no merit report, and ordered Bonneson to provide petitioner with a copy of the no merit report and all documents and transcripts related to the case that were in his possession. (Id. Ex. 14 at 2-3.)

Before Bonneson filed a no merit report, however, petitioner filed a motion with the court of appeals entitled "Motion to Proceed Pro Se." (Id. Ex. 16. at 1.) This motion stated that "[t]he defendant-appellant moving [sic] this court to dismiss appointed appellatae [sic] counsel, Paul G. Bonneson . . . and allow him to proceed pro se in this entitled matter." (Id.) The motion also stated:

> 1. That attorney Bonneson has failed in his capacity to discuss and incorporate the meritable issues on appeal with the defendant-appellant;
> 2. That a no merit report is not the proper vehicle to proceed in this appeal;
> 3. That the defendant-appellant requests that this court appoint Jeffrey A. Voigt to assist him in his postconviction pursuits, for the fact that the defendant-appellant is not legally competent to proceed by himself;
> 4. That defendant-appellant has been assessed as mild mental retarded with a full sale I. Q. of 51;
> 5. That attorney Bonneson be ordered to send immediately to the defendant-appellant with copies of all the transcripts and record documents in his possession.
> 
> The defendant-appellant prays that this court will grant the Order to allow him to proceed pro se and be given an extension of time for filing the Notice of Intent to Pursue Post Conviction Relief.

3

(Id. at 1-2.)  Petitioner's motion to proceed pro se was largely typewritten.  However, at the end of paragraph four of the motion, petitioner wrote by hand "(see attachment)."  This note referred to a Social Security disability report prepared in 1993 concluding that petitioner had an I.Q. of fifty-one and suffered from mild to moderate mental retardation.  The report also noted that petitioner had a severe alcohol problem.

After receiving petitioner's motion to proceed pro se, the court of appeals issued an order stating as follows:

> Apparently, Conley has reconsidered his wish to have Attorney Bonneson continue his representation.  He has now filed a motion indicating that he wishes to proceed pro se.  Like before, he complains that Attorney Bonneson has failed to represent him properly.  Conley states his belief that there are potential issues of arguable merit to be presented on appeal, and he asks that this court appoint "Jeffrey A. Voigt to assist him in his postconviction pursuits."
> Pursuant to Conley's request, the court will relieve Attorney Bonneson of further representation.  Conley is again advised that the public defender will not appoint him new counsel in this matter and that this court does not appoint counsel directly.  Therefore, Conley's decision to proceed pro se is, in all likelihood, irrevocable.
> In regard to Conley's request that the court appoint Jeffrey A. Voigt to represent him, the request will be denied.  The court has no record of Jeffrey A. Voigt being licensed to practice law in this state.  In general, this court does not appoint counsel, but this court will certainly not appoint someone who is not an attorney to represent Conley.  Conley is free to seek assistance from whomever he wishes.  However, because Conley is pro se, he is himself responsible for the filing of any materials before this court.

(Id. Ex. 17 at 2-3.)

Shortly after the court issued this order, petitioner filed a motion to remand the case to the circuit court so that he could file a postconviction motion.  The court of appeals construed this motion as a motion to voluntarily dismiss the appeal, granted the motion, and advised petitioner that he could file a fresh notice of appeal after the postconviction proceedings were completed.  Petitioner then filed a motion with the circuit court which was

4

unrelated to the merits of his case, and when such motion was denied, petitioner appealed to the court of appeals, challenging only the denial of his unrelated motion. The court of appeals affirmed the circuit court's order, and petitioner did not seek review by the state supreme court. While his direct appeal was pending, petitioner also filed various other actions in state court seeking collateral review of his conviction. All of these actions were dismissed. The net result of petitioner's pro se postconviction and appellate efforts was that no state court ever considered the merits of the issues petitioner wished to raise on appeal.

On October 16, 2001, petitioner filed this habeas action, listing twenty-seven grounds for relief. After reviewing the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases, I determined that petitioner had not exhausted his state remedies and ordered that this case be held in abeyance while petitioner attempted to exhaust them.

Pursuant to my order, petitioner attempted to exhaust his state remedies by filing a motion in state court under Wis. Stat. § 974.06 and State ex rel. Rothering v. McCaughtry, 205 Wis. 2d 675 (Ct. App. 1996). Under Rothering, a defendant may bring a motion pursuant to Wis. Stat. § 974.06 before the trial court in which he alleges that his postconviction counsel was ineffective. Id. at 681. Petitioner raised a number of issues in this motion. However, the circuit court determined that none of those issues could be considered pursuant to Rothering unless petitioner showed that his postconviction counsel was ineffective for failing to raise them on direct appeal. Thus, the court viewed the question presented as whether petitioner received ineffective assistance of postconviction counsel. The court concluded that petitioner's postconviction counsel was not ineffective, reasoning as follows:

5

> First, the court finds that postconviction counsel's representation was cut short [by Conley] on appeal, apparently due to the defendant's disagreement with him about filing a no merit report. Attorney Bonneson was permitted to withdraw from Conley's case on March 25, 1999 . . . . Consequently, because postconviction counsel was relieved from his duties, he had no obligation to raise any of the above issues in the Court of Appeals and, hence, he cannot be found ineffective for failing to do so. Once Conley decided that he did not want to proceed with a no merit report, postconviction counsel had no further duty to act on Conley's behalf, either to investigate or to raise meritorious issues.

(Answer [R. 19] Ex. O at 2 (brackets in original, footnotes omitted).) As an alternative ground for denying the motion, the court stated that petitioner's claims were "conclusory and without support in fact or in law." (Id.) The state court of appeals affirmed the circuit court, reasoning as follows:

> All of the claims contained in the Wis. Stat. § 974.06 postconviction motion are essentially brought under the rubric of ineffective assistance of counsel because Conley failed to timely file a direct appeal and, thus, his opportunity passed to bring those claims directly.
>
> . . . .
>
> Conley released Bonneson, his postconviction counsel, shortly after Bonneson advised Conley that he intended to file a "no merit" notice of appeal. As such, Bonneson was under no obligation to raise the claims Conley asserts were missed, as he no longer represented Conley. Postconviction counsel cannot be deemed ineffective for failing to raise issues on behalf of a client he no longer represents. Conley chose to release his postconviction counsel rather than to permit the filing of a no-merit appeal that would have given him the opportunity to respond. Consequently, his attorney was relieved of his duty before the appeal was filed. In acting in this fashion, Conley eliminated any responsibility Bonneson may have had to raise claims of alleged error.

(Id. Ex. S at 3-4 (citation omitted).) The court of appeals also held that, even if petitioner had not cut Bonneson's representation short, petitioner's claim for ineffective assistance of counsel would fail under the test adopted in Strickland v. Washington, 466 U.S. 668

(1984). Petitioner appealed this ruling to the state supreme court, which denied review. Having exhausted his state remedies, petitioner returned to this court.

## II. STANDARD OF REVIEW

A writ of habeas corpus may not be granted with respect to claims adjudicated on the merits in state court unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or unless it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). An "unreasonable application" of Supreme Court precedent occurs when "the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Dixon v. Snyder, 266 F.3d 693, 700 (7th Cir. 2001) (internal footnote and citation omitted; alteration in original).

In the present case, the state court decision under review is the court of appeals's decision affirming the denial of petitioner's Rothering motion.

## III. DISCUSSION

7

Although petitioner raises numerous grounds for habeas relief, his only viable claim is that he was denied his right to counsel on appeal.[1] Petitioner, respondent and the state courts that considered petitioner's Rothering motion all analyzed petitioner's claim under the rubric of ineffective assistance of postconviction/appellate counsel. However, because the court of appeals allowed Bonneson to withdraw before he filed a no merit report, leaving petitioner with no counsel on appeal, the relevant question is not whether Bonneson was ineffective, but whether petitioner was denied his right to counsel on appeal altogether. See Oimen v. McCaughtry, 130 F.3d 809, 812 (7th Cir. 1997) (analyzing case in which petitioner was represented by counsel on appeal until petitioner fired counsel over disagreement concerning issues to be raised as case concerning the denial of appellate counsel). I now turn to that question.

The Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 388-89 (1985) (citing Douglas v. California, 372 U.S. 353 (1963)). However, this does not mean that a defendant has the right to appointed counsel of his choice or the right to insist that the attorney advance every argument, regardless of merit. See Wheat v. United States, 486 U.S. 153, 159 (1988); Jones v. Barnes, 463 U.S. 745, 754 (1983); Jones v. Berge, 246 F. Supp. 2d 1045, 1051 (E.D. Wis. 2003). In an effort to balance these two principles,

> the [Supreme] Court has established certain procedures appointed counsel must follow if he or she concludes that a defendant's appeal lacks merit.

---

[1] Petitioner procedurally defaulted his other claims by failing to raise them at the appropriate time in state court. See, e.g., Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004) (stating that procedural default doctrine bars federal court from considering claim raised in habeas petition that state court did not consider because it found the claim procedurally barred).

8

> See Anders v. California, 386 U.S. 738 (1967). First, counsel must conduct a "conscientious examination" of the case. Second, any motion by counsel to withdraw following such examination must be based on an opinion that the appeal is frivolous and be accompanied by a brief referring to anything in the record that might arguably support the appeal. Third, the defendant must be furnished a copy of the brief and allowed to raise any points that he chooses. And fourth, the appellate court must conduct a thorough examination and decide whether the appeal is wholly frivolous. If the court concludes that there are non-frivolous issues, it must afford the indigent defendant the assistance of counsel to argue the appeal. Id. at 744.

Jones, 246 F. Supp. 2d at 1051.

A defendant can waive his right to the assistance of counsel on appeal. See Speights v. Frank, 361 F.3d 962, 963-65 (7th Cir. 2004); Betts v. Litscher, 241 F.3d 594, 596-97 (7th Cir. 2001); Oimen, 130 F.3d at 811-12 (7th Cir. 1997). However, such a waiver must be "knowing and intelligent." Swenson v. Bosler, 386 U.S. 258, 260 (7th Cir. 1997). A knowing and intelligent waiver of the right to counsel on appeal may be accomplished through written communication between the defendant and the court of appeals. Oimen, 130 F.3d at 812. Further, before a defendant can make a knowing and intelligent waiver, the defendant must be aware of, and understand, his options concerning his right to appellate counsel. See Betts, 241 F.3d at 596. However, although a defendant must be warned about the dangers of self-representation before he can be considered to have made a knowing and intelligent waiver of his right to trial counsel, the Supreme Court has not clearly established any rule of law requiring a defendant to be warned about the dangers of self-representation before a waiver of appellate counsel can be considered knowing and voluntary. Speights, 361 F.3d at 964-65. Instead, "[w]hen a state allows defendants to represent themselves on appeal . . . it may permit them to decide [whether to do so] without the rigamarole that attends waiver of counsel for trial." Id. at 965.

9

Case 2:01-cv-01060-LA   Filed 06/27/05   Page 9 of 13   Document 31

In the present case, whether petitioner was denied his right to counsel on appeal turns on whether he validly waived such right. And the record makes clear that he did. Petitioner's "motion to proceed pro se" was an unequivocal waiver of the right to counsel on appeal. In such motion, petitioner stated that he wanted Bonneson dismissed and requested permission to proceed pro se. Although the motion also requested that the court appoint "Jeffrey A. Voigt" to "assist" petitioner, this was not a request for a new lawyer and did not render his motion to proceed pro se ambiguous. (Submission of Mat'ls [R. 28] Ex. 16 ¶ 3.) Voigt was not a lawyer, and although the record does not definitively reveal who he was, he was probably a fellow inmate.[2] In the court of appeals's order permitting petitioner to proceed pro se, it stated that although it would not formally appoint Voigt to "represent" petitioner, petitioner was still free to seek Voigt's assistance. (Id. Ex. 17 at 2-3.) Thus, petitioner unequivocally waived his right to counsel on appeal.

Further, petitioner's waiver was knowing and intelligent. Once petitioner stated that he wanted to discharge Bonneson, the court of appeals and the public defender's office provided him with clear explanations of his options. They explained to petitioner that if he discharged Bonneson, new counsel would not be appointed and he would have to either continue pro se or retain counsel on his own. They also explained the no merit procedure and petitioner's rights to have Bonneson file a no merit brief, file his own pro se response, and have the court of appeals review the record for any potential issues of arguable merit.

---

[2] A search of Wisconsin's online circuit court access system reveals that in 1994, someone named Jeffrey A. Voigt was convicted of several felonies in Racine County Circuit Court and incarcerated in the Wisconsin correctional system. Further, in one of his filings in this case, petitioner refers to a request he made with the court of appeals involving an "inmate paralegal" being appointed to assist him. (Pet'r's Letter [R. 20] at 2.)

10

Further, petitioner's letters to the court of appeals complaining about Bonneson's representation indicate that petitioner understood his options even before the court and public defender's office explained them. For instance, petitioner stated that "[i]ts [sic] my understanding that pursuant to Wis. Stats. sec. 809.32, I have the right to have the court of appeals review my case for errors and violations of my rights."[3] (Submission of Mat'ls [R. 28] Ex. 2 ¶ 2.) Petitioner's letters also show that he understood that he had the right to counsel on appeal, and that such right included the right to the effective assistance of counsel. (Id. Ex. 4 ¶¶ 7-11 (citing Douglas v. California, Anders v. California, and Evitts v. Lucey).)

Petitioner seems to argue that he was mentally incapable of making a knowing and intelligent waiver of his right to appellate counsel. In support of this argument, he cites to the 1993 Social Security disability report that he attached to his motion to proceed pro se in the court of appeals, which estimated his I.Q. to be 51 and concluded that he suffered from mild to moderate mental retardation. However, besides this report,[4] there is no indication that petitioner was incapable of making a knowing and intelligent waiver of his right to counsel on appeal.[5] Although petitioner states that he was "legally incompetent"

---

[3]Wis. Stat. § 809.32 is the statute governing the state's no merit procedure.

[4]I note that the accuracy of the 1993 Social Security report is questionable. The record in this case contains a reference to a Social Security disability report prepared in 1996 that concluded that petitioner was not mentally retarded. (See id. Ex. 5 (letter from Bonneson to petitioner).) I also note that all of petitioner's filings with the state courts and this court show that petitioner is literate in English and has the ability to communicate through writing. Although his letters are not always composed with perfect grammar and syntax, they indicate a level of intelligence commensurate with the average pro se litigant.

[5]In a collateral attack such as this habeas case, the petitioner bears the burden of proving that he did not competently and intelligently waive his right to counsel. Iowa v.

11

(Pet'r's Letter [R. 20] at 2), he never contends that he actually misunderstood his choices. And as described above, petitioner's letters show that he understood his rights even before the court of appeals and public defender's office explained them to him. Thus, even if petitioner is mentally retarded to some extent, the record indicates that petitioner understood his choices at the time he elected to proceed pro se on appeal.[6] The state court's implicit conclusion that petitioner's waiver of his right to counsel on appeal was knowing and intelligent was therefore not contrary to, nor an unreasonable application of, clearly established Supreme Court law.[7]

---

Tovar, 541 U.S. 77, 92 (2004); Speights, 361 F.3d at 965.

[6] I also note that "[n]ever has the Supreme Court of the United States held that retarded suspects are unable to waive their right to counsel." Young v. Walls, 311 F.3d 846, 849 (7th Cir. 2002).

[7] To the extent petitioner means to argue that he was incapable of making a knowing and intelligent waiver of his right to counsel because he was not able to do a good job of representing himself, I find that such argument is without merit. The Supreme Court has held that "a criminal defendant's ability to represent himself has no bearing on his ability to choose self-representation." Godinez v. Moran, 509 U.S. 389, 400 (1993) (emphasis in original, footnote omitted).

12

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that petitioner's application for a writ of habeas corpus is **DENIED**, and that the clerk of court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27 day of June, 2005.

/s_____
LYNN ADELMAN
District Judge

13

Case 2:01-cv-01060-LA   Filed 06/27/05   Page 13 of 13   Document 31